**CLARKSON LAW FIRM, P.C.**
Glenn A. Danas (SBN 270317)
*gdanas@clarksonlawfirm.com*
Maxim Gorbunov (SBN 343128)
*mgorbunov@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: (213) 788-4050
Facsimile: (213) 788-4070

**CLARKSON LAW FIRM, P.C.**
Kristen G. Simplicio (SBN 263291)
*ksimplicio@clarksonlawfirm.com*
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Telephone: (202) 998-2299

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KASHAWN CAMPBELL and MINNIE JONES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC.; GLENN J. WILLIAMS; PETER W. SCHNEIDER; TRACY TAN; LISA A. BROWN; ROBERT H. PETERMAN, JR.; BRETT A. ROGERS; JULIE A. SEMAN; and DOES 1–50, inclusive,

Defendants.

Case No.: 2:26-cv-01069-ODW-DSR

**FIRST AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT**

1. Failure to Pay Minimum Wage and Liquidated Damages (Cal. Lab. Code §§ 1182.12, 1194, 1197, 1197.1, 1198; IWC Wage Order 4-2001);
2. Failure to Pay Overtime Wages and Liquidated Damages (Cal. Lab. Code § 510; IWC Wage Order 4-2001);
3. Failure to Provide Rest Periods or Rest Break Premium Wages (Cal. Lab. Code §§ 226.7, 558.1);
4. Failure to Provide Meal Periods or Meal Premium Wages (Cal. Lab. Code §§ 226.7, 512(a), 1198; IWC Wage Order 4-2001);
5. Failure to Timely Pay Wages During Employment (Cal. Lab. Code § 204);
6. Failure to Timely Pay Wages Upon Separation (Cal. Lab. Code § 201-203);
7. Failure to Provide Timely and Accurate Wage Statements (Cal. Lab. Code § 226(a), 226(e));
8. Failure to Reimburse Business Expenses (Cal. Lab. Code §§ 450, 2802; IWC Wage Order 4-2001);
9. Unfair Competition (Bus. & Prof. Code § 17200 et seq.)

**JURY TRIAL DEMANDED**

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. JURISDICTION AND VENUE ..... 4

III. THE PARTIES ..... 4

IV. FACTS COMMON TO ALL CLASS MEMBERS ..... 8

- A. Primerica Is a Successful Multilevel Marketing Company That Is Dependent on its Independent Financial Contractors to Engage in Social Media Marketing on Its Behalf ..... 8
- B. Primerica Independent Financial Contractors Are Employees ..... 9
  - 1. Controlling Law ..... 9
  - 2. Independent Financial Contractors Are Not Free from Primerica's Control ..... 11
  - 3. Independent Financial Contractors' Work Is Not Outside Primerica's "Usual Course of Business" ..... 13
  - 4. Primerica Cannot Meet Its Burden To Show That Independent Financial Contractors Are "Customarily Engaged" in a Separate Business ..... 13
  - 5. The Policies that Independent Financial Contractors are subject to are Unconscionable, Unfair, and Unlawful. ..... 15
- C. Primerica's Misclassification of Plaintiffs and Class Members Was Willful. ..... 17
- D. Primerica's Misclassification of Plaintiffs and Class Members and Unfair Business Practices Harm the California Public. ..... 18
  - 1. Primerica Uses Widespread Advertising Practices Directed at the General Public to Recruit New Independent Financial Contractors. ..... 19

2. Primerica's Unfair and Unlawful Conduct Harms California in Other Ways. .......... 21

E. Plaintiff Campbell's Experiences as a Primerica Independent Financial Contractor .......... 22

F. Plaintiff Jones's Experiences as a Primerica Independent Financial Contractor .......... 24

V. CLASS ALLEGATIONS .......... 26

VI. CAUSES OF ACTION .......... 29

FIRST CAUSE OF ACTION .......... 29

SECOND CAUSE OF ACTION .......... 31

THIRD CAUSE OF ACTION .......... 33

FOURTH CAUSE OF ACTION .......... 34

FIFTH CAUSE OF ACTION .......... 36

SIXTH CAUSE OF ACTION .......... 37

SEVENTH CAUSE OF ACTION .......... 38

EIGHTH CAUSE OF ACTION .......... 40

NINTH CAUSE OF ACTION .......... 42

VII. PRAYER FOR RELIEF .......... 45

VIII. DEMAND FOR TRIAL BY JURY .......... 46


Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Plaintiffs KASHAWN CAMPBELL And MINNIE JONES bring this action, individually, and on behalf of a class of similarly situated individuals, against PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC., GLENN J. WILLIAMS, PETER W. SCHNEIDER, TRACY TAN, LISA A. BROWN, ROBERT H. PETERMAN, JR., BRETT A. ROGERS, JULIE A. SEMAN, and DOES 1–50, Inclusive, (Collectively, "Defendants" or "Primerica"). Plaintiffs' allegations against Defendants are based upon investigation carried out by Plaintiffs' counsel, except for allegations pertaining specifically to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

## I. INTRODUCTION

1. Primerica is a massively successful company that, for years, has exploited its California salesforce by misclassifying its workers as independent contractors rather than as employees. Plaintiffs were each a Primerica "Independent Financial Contractor," one of the many active sales workers in California who sell Primerica products and/or recruit other Independent Financial Contractors through their networks under Primerica's strict direction and control. In exchange for Independent Financial Contractor's work promoting the brand on social media, acquiring new customers, engaging existing customers, providing customer service, recruiting and training new Independent Financial Contractors, and driving traffic to Primerica's website, Primerica pays them, at most, a paltry commission.

2. Headquartered in Duluth, Georgia, Primerica develops and sells term life insurance and investment and financial services. Pursuant to Primerica's business model, it establishes relationships with various individuals known as "Independent Financial Contractors" who market and sell Primerica products. Primerica has spent a great deal of time and resources in implementing and managing a broad range of employment policies and procedures for its Independent Financial Contractors. Despite designating these salespeople as independent contractors, Independent Financial Contractors are in fact Primerica employees under California law. Primerica

has violated numerous provisions of the California Labor Code and applicable IWC Wage Order by denying its Independent Financial Contractors the compensation, other benefits and statutory entitlements that they are owed.

3. Primerica maintains a centralized, rigorous, and stringent sales policy to which each of its Independent Financial Contractors must rigidly adhere should they expect any commission for their sales of Primerica products. Even when these Independent Financial Contractors do follow Primerica's exacting direction to the tee, the majority of Independent Financial Contractors fail to even break even, having sunk substantial personal investment into marketing Primerica products—business expenditures which Primerica shifts onto their frequently financially insecure workers, which Primerica refuses to reimburse.

4. Via its pervasive marketing and sales guidelines, Primerica directed Independent Financial Contractors to market and sell term life insurance and to recruit others to do the same. In exchange for the Independent Financial Contractors' work selling Primerica's product, promoting the opportunities on social media, referring new customers, recruiting new Independent Financial Contractors, providing customer service, and driving traffic to Primerica's website, Primerica pays Independent Financial Contractors at most a paltry commission.

5. Primerica's ability to avoid accountability to its employees thus far turns on the fact that it operates as multi-level marketing business ("MLM").[1] Primerica's recruitment tactics purportedly promise its Independent Financial Contractors the opportunity to build a business; in reality, however, they supply free marketing and sales support for Primerica.

6. Primerica strictly controls the work product of its Independent Financial Contractors, in part by ensuring that they follow its rigid guidelines for marketing

[1] Gerald Albaum & Robert A. Peterson, *Multilevel (Network) Marketing: An Objective View*, 11 MARKETING R. 347, 347–61 (2011).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

content and recruiting materials. In recent years, Primerica's direction and control of its Independent Financial Contractors work product has become all-encompassing.

7. Plaintiffs were victims of Primerica's practices. Like all Independent Financial Contractors, in accordance with Primerica's strict marketing and sales protocols, Plaintiffs were trained by other Independent Financial Contractors and were required to market, distribute, and sell life insurance, and/or promote recruitment opportunities to the public in accordance with Primerica's instructions and parameters. And in return, Plaintiffs were paid virtually nothing or nothing at all, while incurring unreimbursed personal costs to perform the work on Primerica's behalf.

8. For these reasons, Plaintiffs bring this action to recover unpaid wages, overtime compensation, penalties, interest, injunctive relief, other equitable remedies, damages, and reasonable attorneys' fees and costs under the California Labor Code, Cal. Lab. Code §§ 201, 202, 203, 204, 226(a), 226.7, 226.8, 510, 512(a), 1194, 1197, 1197.1, 1198, 2800, and 2802 (the "CLC"), IWC Wage Order 4-2001 (8 Cal. Code Regs. § 11040), and California Unfair Competition Law (Cal. Bus. & Prof Code §§ 17200 *et seq.*). In addition, Primerica's conduct violates various municipal and county codes in California, including but not limited to City of Los Angeles Municipal Code Art. 7; County of Los Angeles Code § 8.100.040, *et seq.*, San Francisco Cal. Code 12R.

9. Upon information and belief, Primerica has not addressed and/or changed its unlawful practices, including failing to provide compliant meal and rest periods, and has continued to deprive employees of money owed to them in straight and overtime compensation. By bringing this action, Plaintiffs intend to stop this ongoing and unlawful practice and recover back wages and overtime to which they are rightfully entitled.

## II. JURISDICTION AND VENUE

10. The monetary damages, restitution, and equitable relief sought by Plaintiffs and the other class members exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

11. This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, section 10. The statutes under which this action is brought do not specify any other basis for jurisdiction.

12. This Court has jurisdiction over all Defendants because, upon information and belief, Defendants are citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by California courts consistent with traditional notions of fair play and substantial justice. Indeed, Primerica's "Home Office" (the Defendants' principal place of business), is located in Duluth, Georgia. Indeed, Primerica has registered with the California Secretary of State as conducting business in California since 1981. Moreover, the acts and omissions detailed herein occurred in California.

13. Venue is proper in this Court because Plaintiff Campbell performed work for Defendants in Los Angeles, California: within Los Angeles County, while Plaintiff Jones performed work for Defendants in San Bernardino County, California. Defendants' acts and omissions in violation of the relevant labor statutes are thus physically tied to Plaintiffs' residential addresses.

14. Upon information and belief, Defendants direct and control a large workforce of "Independent Financial Contractors" throughout California, and have agents, employ individuals, and/or transact business in the State of California.

## III. THE PARTIES

15. Plaintiffs are Kashawn Campbell, an individual and resident of Los Angeles, California, and Minnie Jones, an individual and resident of San Bernardino County, California.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

16. Primerica Financial Services Insurance Marketing, Inc. is an entity incorporated under the laws of the State of Delaware, with a principal place of business in Duluth, Georgia.

17. Plaintiffs are informed and believe and based thereon allege that Glenn J. Williams is, and at all times relevant hereto was, an individual residing in Georgia, as well as Chief Executive Officer of Primerica. Plaintiffs are further informed and believe and based thereon allege that Glenn J. Williams, in his capacity as the Chief Executive Officer of Primerica, exercised control over the wages, hours and/or working conditions of Plaintiffs and other putative class members, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

18. Plaintiffs are informed and believe and based thereon allege that Peter W. Schneider is, and at all times relevant hereto was, an individual residing in Georgia, as well as President of Primerica. Plaintiffs are further informed and believe and based thereon allege that Peter W. Schneider, in his capacity as the President of Primerica, exercised control over the wages, hours and/or working conditions of Plaintiffs and other putative class members, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

19. Plaintiffs are informed and believe and based thereon allege that Tracy Tan is, and at all times relevant hereto was, an individual residing in Georgia, as well as Executive Vice President and Chief Financial Officer of Primerica. Plaintiffs are further informed and believe and based thereon allege that Tracy Tan, in her capacity as the Executive Vice President and Chief Financial Officer of Primerica, exercised

control over the wages, hours and/or working conditions of Plaintiffs and other putative class members, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

20. Plaintiffs are informed and believe and based thereon allege that Lisa A. Brown is, and at all times relevant hereto was, an individual residing in Georgia, as well as Executive Vice President and Chief People Officer of Primerica. Plaintiffs are further informed and believe and based thereon allege that Lisa A. Brown, in her capacity as the Executive Vice President and Chief People Officer, exercised control over the wages, hours and/or working conditions of Plaintiffs and other putative class members, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

21. Plaintiffs are informed and believe and based thereon allege that Robert H. Peterman, Jr. is, and at all times relevant hereto was, an individual residing in Georgia, as well as Executive Vice President and Chief Operating Officer of Primerica. Plaintiffs are further informed and believe and based thereon allege that Robert H. Peterman, Jr., in his capacity as the Executive Vice President and Chief Operating Officer of Primerica, exercised control over the wages, hours and/or working conditions of Plaintiffs and other putative class members, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

22. Plaintiffs are informed and believe and based thereon allege that Brett A. Rogers is, and at all times relevant hereto was, an individual residing in Georgia, as well as Executive Vice President and General Counsel of Primerica. Plaintiffs are further informed and believe and based thereon allege that Brett A. Rogers, in his capacity as the Executive Vice President and General Counsel of Primerica, exercised control over the wages, hours and/or working conditions of Plaintiffs and other putative class members, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

23. Plaintiffs are informed and believe and based thereon allege that Julie A. Seman is, and at all times relevant hereto was, an individual residing in Georgia, as well as Executive Vice President and Chief Marketing and Innovation Officer of Primerica. Plaintiffs are further informed and believe and based thereon allege that Julie A. Seman, in her capacity as the Executive Vice President and Chief Marketing and Innovation Officer of Primerica, exercised control over the wages, hours and/or working conditions of Plaintiffs and other putative class members, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

24. The true names and capacities of Defendants sued as DOES 1–50, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiffs will seek leave to amend this Demand when said true names and capacities have been ascertained.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## IV. FACTS COMMON TO ALL CLASS MEMBERS

### A. Primerica Is a Successful Multilevel Marketing Company That Is Dependent on its Independent Financial Contractors to Engage in Social Media Marketing on Its Behalf

25. Primerica is a massively successful multi-level (network) financial solutions company that serves both US and international markets with its portfolio of term life insurance and investment services.[2] Primerica was founded in 1977 to provide financial services to serve the middle-income market in North America.[3] In 2024, Primerica reported $604 thousand in revenue from their term life insurance segment alone.[4]

26. Primerica's success stems from its dependence on a massive network of Independent Financial Contractors. The organization's multi-level marketing, or "network marketing" or "direct sales," structure is the sole reason for Primerica's continued profitability.

27. But Primerica has for decades exploited its California salesforce of Independent Financial Contractors by misclassifying these so-called Independent Financial Contractors as independent contractors rather than as employees. In knowingly and willfully misclassifying these employees, Primerica has been able to mine free marketing and sales support from their Independent Financial Contractors. The cost of sales and marketing that Primerica has thus far offloaded on its Independent Financial Contractors is highly valuable, potentially worth millions.

28. Despite the pivotal role of its salesforce, Primerica has never properly classified Independent Financial Contractors as employees. Rather, Primerica adheres to a multi-level (network) marketing organization structure, in which it offers people the purported "opportunity" to develop their own business earning commission by

---

[2] *Primerica: About*, PRIMERICA, https://www.primerica.com/public/about-primerica.html (last visited Sept. 26, 2025).

[3] *Id.*

[4] *Form 10-K for Fiscal Year Ended Dec. 31, 2024,* PRIMERICA, p. 57, https://www.sec.gov/Archives/edgar/data/1475922/000095017025029882/pri-20241231.htm (last visited Sept. 26, 2025).

selling Primerica products and recruiting others to do the same, designating them as "independent contractors."

29. However, these Independent Financial Contractors are not independent contractors under applicable law. Primerica instead chose to unlawfully secure an expansive marketing and sales network for minimal to no cost. It has reaped enormous profits by deliberately avoiding paying wages and benefits to those performing the sales work that forms the backbone of Primerica's business. Primerica charges its Independent Financial Contractors for access to the instrumentalities needed to sell products, further increasing its profits and decreasing Independent Financial Contractors' pay, in violation of California law. The intended result is for Independent Financial Contractors to receive, at most, de minimis profit from their work, while providing free labor and shouldering the costs of doing business that Primerica should be bearing.

**B. Primerica Independent Financial Contractors Are Employees**

**1. Controlling Law**

30. Companies like Primerica were never supposed to be allowed to run an entire business on the backs of independent contractors. People who work in a company's core line of business are its "employees." *United States v. Silk*, 331 U.S. 704, 718 (1947).

31. Primerica claims an unprecedented portion of its workforce as "independent contractors." In its most recently published numbers, Primerica disclosed that in 2024 it had 151,000 life insurance licensed "independent contractor representatives" and had an estimated 2,800 full-time "employees."[5] Thus, in 2024, Primerica claimed at least 98% of its workforce as "independent contractors."

32. Primerica employees perform a variety of roles: some work as human resources specialists, service desk technicians, and others as cybersecurity operations

[5] *Primerica: Joining Primerica FAQs*, PRIMERICA, https://www.primerica.com/public/working-at-primerica-faq.html (last visited Sept. 26, 2025).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

managers. These workers receive special treatment from Primerica, including benefits such as employee health and welfare programs, employee assistance programs, and 401(k) plans.[6]

33. But Independent Financial Contractors, who make up the bulk of Primerica's workforce, are denied even the most basic protections of federal and state labor laws. Primerica does not pay them minimum wage; it does not pay overtime; and it does not reimburse business expenses, such as internet connection, fees, cell phones, or promotional items. Its classification of its Independent Financial Contractors also deprives them of basic protections against discrimination and sexual harassment.

34. By design, "independent contractors" are exempted from "nearly every" labor law, but this classification was not meant to be a loophole for companies like Primerica, whose Independent Financial Contractors are effectively modern-day telemarketers.[7] "Historically, firms reserved the independent contractor designation for entrepreneurial individuals whose skills demanded higher pay in the open market."[8] With this in mind, "[l]egislatures rationalized excluding [independent contractors] from most employment laws because these individuals did not require the same legal protections as potentially more vulnerable, less-skilled 'employees.'"[9]

35. Today, Primerica preys upon many of the most vulnerable members of our society. Despite being a $40 billion industry, "the vast majority of people involved in them don't make money off of MLMs, and many people lose money."[10] Primerica's Independent Financial Contractors are no exception: according to Primerica's own

---

[6] *Primerica: Careers*, PRIMERICA, https://www.primerica.com/public/primerica-corporate-careers.html (last visited Sept. 26, 2025).

[7] Keith Cunningham-Parmeter, *From Amazon to Uber: Defining Employment in the Modern Economy*, 96 B.U. L. REV. 1673, 1683–84 (2016).

[8] *Id.*

[9] *Id.*

[10] Emily Stewart, *$5 Jewelry And An MLM Conference Gone Wrong: Multilevel Marketing Companies Were the "Perfect" Pandemic Business*, VOX (Sept. 23, 2021), https://www.vox.com/the-goods/22688317/mlm-covid-19-pandemic-recruiting-sales-paparazzi (citing study finding that 99 percent of MLM participants lose money).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Disclosures statement, the average that their sales members earned is $7,757 for the entire year in 2024.[11]

36. In recent years, state legislatures have taken action to send a clear message that most workers should be "employees."

37. California has adopted the "ABC Test" to determine whether a company, like Primerica, has misclassified its workers as "independent contractors." Because employee status was meant to be the default, the ABC Test "presumptively considers all workers to be employees and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions:

A. that the worker is free from the control and direction of the hirer in connection with the performance of the work… ***and***

B. that the worker performs work that is outside the usual course of the hiring entity's business; ***and***

C. that the worker is customarily engaged in an independently established … business of the same nature as that involved in the work performed."

*Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 956–57 (2018) (emphasis in original).

**2. Independent Financial Contractors Are Not Free from Primerica's Control**

38. To engage in term life insurance work for Primerica, the company requires Independent Financial Contractors to hold a license to sell; however allows Independent Financial Contractors to work as recruiters without any licensure. Primerica also requires Independent Financial Contractors to pay a registration fee, pay monthly fees to use the Primerica website, and pay a fee to take the licensing exam.[12]

[11] *Primerica Disclosures*, PRIMERICA https://www.primerica.com/public/primerica_disclosures.html#accordion (last visited Dec. 2, 2025).

39. All Independent Financial Contractors are required to adhere to Primerica's policies and rules. For example, Independent Financial Contractors are forbidden from mentioning Primerica by name in any promotions. Another rule demands exclusivity: Independent Financial Contractors are only allowed to make sales and recruit on behalf of Primerica.

40. Because Primerica treats the Independent Financial Contractors as independent contractors, it does not pay them any salary, wages, or benefits. Rather, as is typical in the MLM industry, the Primerica Compensation Plan provides for two types of compensation: (1) for sales the Independent Financial Contractor made to consumers, the Independent Financial Contractor receives a small percentage as a commission, and (2) if the Independent Financial Contractor builds a "downline," i.e., recruits other new Independent Financial Contractors to market and sell Primerica products and recruit more Independent Financial Contractors, then the "upline" Independent Financial Contractor receives commissions for sales made by those Independent Financial Contractors in their downline.[13] Primerica also offers special "bonuses" to those Independent Financial Contractors who hit certain sales and recruiting metrics in various time frames.

41. Independent Financial Contractors are responsible for all expenses. This includes an auto-renewing monthly fee to use the Primerica platform, a registration fee, and a licensing fees. Primerica does not reimburse Independent Financial Contractors for these purchases, nor for the costs of a cell phone, internet, or other routine business expenses.

---

[13] The "upline" and downline" concepts are the hallmark of the MLM structure. To illustrate, when an established Independent Financial Contractor, whom we will call "Amy," recruits a friend, whom we will call "Bill," to be an Independent Financial Contractor, Bill is in Amy's downline; and Amy is in Bill's upline. If Bill in turn recruits a new Independent Financial Contractor, whom we will call "Chris," then Bill has an upline (to Amy) and a downline (to Chris); the established Independent Financial Contractor Amy now has two levels to her downline, to Bill (first level), and Chris (second level). Should Chris then recruit someone, the established Stylist Amy would have three levels to her downline.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

42. In the Agreement, Primerica gives itself broad rights to control Independent Financial Contractors and mandate conformance with its directives.

43. Primerica sets the prices and restrictions for life insurance plans and does not permit adjustments; there is no way for an Independent Financial Contractor to match competitors' rates or bypass age/health restrictions or use any other offer that is not listed by Primerica. This significantly limits Independent Financial Contractors' marketing discretion.

44. Primerica also restricts Independent Financial Contractors from using any platform other than Primerica's website to make online sales. By making the Replicated Websites available and performing the back-end work, Independent Financial Contractors would be less likely to seek out other e-commerce platforms to sell the products even if they were permitted.

**3. Independent Financial Contractors' Work Is Not Outside Primerica's "Usual Course of Business"**

45. Primerica views the work of the Independent Financial Contractors to market the products online as central to its business model. The primary benefit to Primerica from the Independent Financial Contractors' work is through their sales and recruitments made directly on Primerica's behalf. Primerica enjoys an army of 151,000 Independent Financial Contractors, growing ever-stronger by recruitment efforts, to market a product where its terms of sale have already been predetermined. Primerica sets strict confines for its Independent Financial Contractor workforce to operate within, leading to predictable profit margins at the expense of seller independence.

**4. Primerica Cannot Meet Its Burden To Show That Independent Financial Contractors Are "Customarily Engaged" in a Separate Business**

46. Primerica cannot meet its burden to show that Independent Financial Contractors are "customarily engaged" in an independently established sales and marketing business. Instead, most Independent Financial Contractors are recruited

regardless of their skill or experience and only encouraged to attain licensure thereafter. They perform sales and marketing for Primerica (using Primerica's approved platforms) and maintain no separate sales or marketing business.

47. Independent Financial Contractors are not required to have any background in sales, marketing, or finance prior to becoming Independent Financial Contractors. Independent Financial Contractors are not required to meet any educational requirements, either. For example, they do not need to have any schooling, training, or prior employment in fields relating to insurance. Nor does Primerica require that they have schooling, training, or prior employment in marketing, sales, or general business. Instead, Primerica only requires that an Independent Financial Contractor agree to pay the registration and monthly fees and eventually pass the state's insurance licensing exam to make sales (or not even become licensed if they only recruit). In fact, most Independent Financial Contractors have little to no prior relevant experience or training.

48. Most Independent Financial Contractors have never owned or operated their own separate sales business outside of Primerica. And most Independent Financial Contractors do not maintain any registered or incorporated sales or marketing business, for their work with Primerica or otherwise. Independent Financial Contractors generally do not hold themselves out to others as sales or marketing professionals or maintain any office or business address.

49. Rather than rely on Independent Financial Contractors' own business acumen or sales experience to market products, Primerica provides the instrumentalities of Independent Financial Contractors' sales. It provides customized URLs to its Independent Financial Contractors to direct customers to their local representatives' contact information.

50. Ultimately, Primerica intends for Independent Financial Contractors to see Primerica as an employer, not as a client. In other words, regardless of whether an Independent Financial Contractor maintains any kind of independent business,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Primerica's policies and mandated instrumentalities of work make it so the Independent Financial Contractor's responsibilities are not those that are of the sort that would be performed by an independent and trained professional. The expectation is that the Independent Financial Contractors are using Primerica's brand to sell, not their own business's identity. Likewise, Primerica's policies promoting sales through Primerica URLs and restrictions on using other websites as a point of sale effectively prevent Independent Financial Contractors from integrating the sale of Primerica products into any pre-existing business. And Primerica prohibits Independent Financial Contractors from using its platforms to promote other businesses, including any other multi-level marketing companies.

51. Primerica exerts substantial control on Independent Financial Contractors' marketing efforts. They are forbidden from mentioning Primerica by name at the outset of the recruitment and sales process. It is not until the prospective client or Independent Financial Contractor meets with a Lead that they learn that the product or opportunity is offered by Primerica.

52. Further, Primerica actively limits Independent Financial Contractors' ability to engage in sales or recruitment opportunities outside Primerica. For example, Primerica prohibits Independent Financial Contractors from selling insurance products from other companies, from recruiting other Independent Financial Contractors to join other MLMs, or even to market other MLM products to fellow Independent Financial Contractors.

**5. The Policies that Independent Financial Contractors are subject to are Unconscionable, Unfair, and Unlawful.**

53. The policies imposed by Primerica on Independent Financial Contractors are tools by Primerica to exert control while maximizing Primerica's profits. The policies and agreements are on a take-it-or-leave it deal, with no opportunity for negotiation. And many Independent Financial Contractors discover that the arrangement is one in which they will spend extraordinary amounts of time and





Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

money promoting the company's products with little payoff. [14] Indeed, the effect of the Agreement, when considered in tandem with Primerica's other business practices, grossly restricts Independent Financial Contractors' ability to profit from their work advertising sales, and may cause Independent Financial Contractors to turn attention to recruiting more Independent Financial Contractors into a futile business endeavor.

54. Indeed, MLMs like Primerica have been criticized for the fact that few of the sellers manage to profit. At least one study concluded that 99% of MLM participants do not earn money;[15] another found that only 25% earned a profit.[16] Primerica's numbers are consistent with this low rate of success; Independent Financial Contractors rarely make any money. In 2024, Primerica says it paid its life-licensed sales members an average of $7,757, but then adds that this "cash flow shown reflects an extraordinary level of success that is not typical of the sales force."[17] Primerica's misrepresentation of its sales force's earnings implies that their take-home pay is incredibly low, consistent with the aforementioned studies. As described throughout, Independent Financial Contractors themselves foot the bill for registration fees, monthly fees, licensing fees, Primerica-related travel, office supplies, insurance premiums, products purchased for business purposes, marketing materials, and internet and phone bills, inter alia.

55. Moreover, Primerica has structured its business operations and Agreements to benefit from the addition of more Independent Financial Contractors, while Independent Financial Contractors lose. Primerica benefits when tens of thousands are active but incurs no other expense unless the Independent Financial Contractor generates a sale. While Primerica benefits from an oversaturation of

---

[14] Abby Vesoulis & Eliana Dockterman, *Pandemic Schemes: How Multilevel Marketing Distributors Are Using the Internet—and the Coronavirus—to Grow Their Businesses*, TIME, Jul. 9, 2020, https://time.com/5864712/multilevel-marketing-schemes-coronavirus/.

[15] *Id.*

[16] *What is Multilevel Marketing (MLM)?*, AARP FOUNDATION, https://www.aarp.org/aarp-foundation/our-work/income/multilevel-marketing/ (last accessed Oct. 30, 2024).

[17] *Primerica: Disclosures*, PRIMERICA, https://www.primerica.com/public/primerica_disclosures.html#accordion (last visited Sept. 29, 2025).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Independent Financial Contractors, the individual Independent Financial Contractors only have more competitors and a harder time setting themselves apart. And nowhere in the Agreement does Primerica promise to limit the number of Independent Financial Contractors retained in any way.

56. Given that Independent Financial Contractors must compete with Primerica and other Independent Financial Contractors for retail sales under such oppressive and onerous terms, it is no surprise that the overwhelming majority never receive commission or struggle to break even. But because Independent Financial Contractors receive commission from the retail sales made by any Independent Financial Contractors they recruit, Primerica's own income disclosures indicate that those who advance to higher levels through recruiting more Independent Financial Contractors on average earn more money. Thus, Independent Financial Contractors have a financial incentive to advertise the opportunity to work with Primerica under these unfair, unconscionable, and oppressive terms. Those new Independent Financial Contractors, in turn, will pay Primerica various fees discussed herein, promote Primerica on social media, be subject to the same restrictions on selling as those who recruited them, and, like those before them, find profiting from selling to be futile and turn to recruiting.

**C. <u>Primerica's Misclassification of Plaintiffs and Class Members Was Willful.</u>**

57. Primerica's decision to misclassify Plaintiffs and Class Members as independent contractors was willful and intentional.

58. ***First,*** Primerica is registered to do business in California, and employs personnel in a variety of roles there, and thus, it is implementing California's labor and employment laws as a matter of regular practice. It is a highly sophisticated, large company, and as such, its legal team likely includes California lawyers, both those at the prestigious law firms that provide it representation in other matters, as well as those comprising its team of in-house counsel. Both its management and its legal team

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

would be exposed to news about changes in California law with respect to misclassification.

59. ***Second,*** as detailed above, Primerica had policies and practices that set forth various rules and requirements. Primerica knew and intended for Independent Financial Contractors to conform to these rules and requirements and ensured adherence through its own platforms and other instrumentalities.

60. ***Third,*** Primerica knows and depends on the Independent Financial Contractors and even the highest levels of the company understand that the Independent Financial Contractors play an essential role in Primerica's growth and business model. The management team not only understands the essential role the Independent Financial Contractors play, but knows they are classified as independent contractors, as evidenced by their decision to operate the company as an MLM. Thus, the decision was not a singular decision by a low-level employee, but a conscious and knowing choice endorsed by the highest levels of Primerica's management.

61. ***Fourth,*** Primerica further knows and understands as an MLM, few workers will make money under a commission structure, and repeatedly states in publicly accessible documents that its Independent Financial Contractors only get paid if they make a sale, no matter how many hours they worked promoting Primerica. Indeed, the commission structure represents a significant cost savings over the payment of hourly wages. Primerica is aware that it is receiving inexpensive, commission-based work from its Independent Financial Contractors—it intentionally structured the program in that way.

**D. Primerica's Misclassification of Plaintiffs and Class Members and Unfair Business Practices Harm the California Public.**

62. Primerica's misclassification of its workers and unfair and unconscionable business model threatens the general public. Because Primerica has no incentive to stop these practices, a public injunction is necessary to stop these practices.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**1. Primerica Uses Widespread Advertising Practices Directed at the General Public to Recruit New Independent Financial Contractors.**

63. Primerica has eschewed traditional recruiting practices in lieu of widespread advertising. Because of how Primerica recruits, nearly everyone in the state of California is likely to be targeted for recruiting and engagement in Primerica's unfair and unlawful business model.

64. Rather than market job opportunities to job seekers meeting certain criteria, Primerica uses its Independent Financial Contractors to promote the Independent Financial Contractor opportunities in the same way they advertise its products. Primerica has set up its compensation structure and business model to incentivize Independent Financial Contractors to turn to recruiting, and those Independent Financial Contractors, in turn, will promote the opportunity to their customers, as well as their family and friends. Thus, the public does not need to be affirmatively seeking out job opportunities; merely having a friend or family member working as an Independent Financial Contractor may subject them to recruiting messaging, and by extension, could lead them to accept the Agreement and become an Independent Financial Contractor.

65. Moreover, Primerica's reliance on its existing Independent Financial Contractor network to advertise the Independent Consulting opportunity is likely to cause the message to reach the general public at large, as its network is enormous. Indeed, Primerica reported a 21,000 increase in its Independent Financial Contractor workforce from 2023 to 2024.[18] The MLM industry generally saw massive upticks in enrollment numbers during the COVID-19 pandemic, and numbers reported by Primerica indicate consistent, rapid growth. There are likely thousands of

[18] *Primerica: FAQs: How Many Representatives Does Primerica Have?*, PRIMERICA, https://web.archive.org/web/20241002124051/https://www.primerica.com/public/frequently-asked-questions.html; https://www.primerica.com/public/frequently-asked-questions.html (last visited Sept. 29, 2025).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Independent Financial Contractors in California, and numbers could surge further under another pandemic or major economic downturn.

66. Because of the financial incentives those Independent Financial Contractors receive, members of the public may sometimes repeatedly and consistently receive advertising about the Independent Financial Contractor opportunity over weeks or months at a time, and perhaps from multiple Independent Financial Contractors. Indeed, each newly recruited Independent Financial Contractor presents the risk of an exponential increase in Independent Financial Contractors. Independent Financial Contractors can maintain their status and receive additional compensation based on the sales volume of the downline Independent Financial Contractors that they recruited. The more Independent Financial Contractors recruited into their downline, the more likely it is that they will be able to generate more income.

67. Because Independent Financial Contractors are incentivized to aggressively recruit new Independent Financial Contractors, California's residents are vulnerable to long-term consequences of Primerica's rampant misclassification. Notably, Primerica is not a selective employer; it requires little in the way of experience or other criteria besides passing a licensure test. Many adults in the state of California could likely apply for the job, and millions of people in the state may seek out this opportunity. Indeed, it is estimated that one in every thirteen Americans will participate in an MLM at some point in their lifetimes.[19] This could translate into hundreds of thousands of Californians, if not millions of Californians, who are at risk of being recruited into an illegal and unfair working arrangement.

[19] Marguerite DeLiema, et al., *AARP Study of Multilevel Marketing: Profiling Participants and their Experiences in Direct Sales*, AARP FOUNDATION (2018), at 13, https://www.aarp.org/content/dam/aarp/aarp_foundation/2018/pdf/AARP%20Foundation%20MLM%20Research%20Study%20Report%2010.8.18.pdf.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**2. Primerica's Unfair and Unlawful Conduct Harms California in Other Ways.**

68. Beyond recruitment, Primerica's misclassification of its Independent Financial Contractors harms Californians both economically and socially. When Independent Financial Contractors lose money and accumulate credit card debt, they and their families are harmed by the siphoning away of their uncompensated time and lost money on business expenses. This results in them and their families having fewer resources to invest in legitimate businesses and less time to spend working for real, guaranteed wages. And instead of the opportunity being a "side hustle" that allows them to pay off mortgages or student loan debt, cover costs of childcare, or otherwise advance financially, the loss of money from being an Independent Financial Contractor could cause them more economic hardship.

69. This public harm intensifies during periods of crisis. It is well-documented that MLMs, like Primerica, profited from greater recruitment of participants during the COVID-19 pandemic.[20] Primerica expects the same profit from future crises, such as financial recessions, because it recruits new Independent Financial Contractors under the guise that they will be able to grow their own business with a sustainable income. Primerica siphons potential workers away from legitimate opportunities with the promises of building a personal business, when these individuals are under Primerica's control, with none of the benefits of proper classification.

70. Primerica's practices also harm competitors, such as legitimate companies in the insurance space, who must and do pay wages and benefits at prevailing market rates to market and sell their products. By misclassifying its workers and paying them only commissions, Primerica incurs lower expenses, giving it a competitive advantage over other market participants.

---

[20] Abby Vesoulis & Eliana Dockterman, *Pandemic Schemes: How Multilevel Marketing Distributors Are Using the Internet—and the Coronavirus—to Grow Their Businesses*, TIME, Jul. 9, 2020, https://time.com/5864712/multilevel-marketing-schemes-coronavirus/.

71. The California Legislature specifically considered harms like these in passing AB 5. The legislature recognized "harm to misclassified workers who lose significant workplace protections, the unfairness to employers who must compete with companies that misclassify, and the loss to the state of needed revenue from companies that use misclassification to avoid obligations such as payment of payroll taxes, payment of premiums for workers' compensation, Social Security, unemployment, and disability insurance" and that "the misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality." Primerica's continued misclassification of California workers will exacerbate all these harms to the California public.

72. Absent an injunction protecting the public from the negative impacts of Defendants' illegal activities, including by and through their officers and/or entities in their control, the California public remains at risk from Primerica's deceptive recruitment strategies and the economic and social harms created by their unlawful practices.

**E. Plaintiff Campbell's Experiences as a Primerica Independent Financial Contractor**

73. Plaintiff Campbell worked for Primerica as an Independent Financial Contractor from June 2014 to June 2024.

74. When he signed up, Primerica required Plaintiff Campbell to adhere to its many rules and policies, including its exclusivity policy and rule against naming Primerica in any advertisements. Plaintiff Campbell was not engaged in an independently established trade, occupation, or business as a sales professional and had limited sales experience. Primerica also required Plaintiff Campbell to pay a registration fee to become an Independent Financial Contractor.

75. Primerica also provided Plaintiff Campbell with a personalized Primerica website URL for prospective clients and recruits to refer to.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

76. In the course of his tenure as an Independent Financial Contractor on behalf of Primerica, Plaintiff predominantly recruited Independent Financial Contractors and sold Primerica term life insurance. To carry out this recruiting and sales work, Plaintiff performed the following tasks:

a) Sold Primerica term life insurance;

b) Marketed Primerica term life insurance and recruitment opportunities via social media;

c) Participated in efforts to recruit and onboard Independent Financial Contractors;

d) Attended meetings with upline and downline Independent Financial Contractors;

e) Tracked and reported his progress in recruiting and sales.

77. Plaintiff Campbell performed all these tasks regularly throughout his tenure, typically spending about forty hours a week, often working for periods of more than eight hours. Plaintiff Campbell performed these activities throughout the day, nearly every day, often in short increments adding up to eight hours a day.

78. Plaintiff Campbell, like all Independent Financial Contractors, worked under Primerica's pervasive control and direction. Selling Primerica products—the main responsibility of Independent Financial Contractors—is work that is precisely in line with Primerica's usual course of business.

79. Primerica's pervasive control was exemplified by disciplinary action received by Plaintiff Campbell for posting social media promotions referencing Primerica by name.

80. Plaintiff Campbell paid the following fees and out-of-pocket, work-related expenses throughout his tenure, for which he was not reimbursed by Primerica:

a) A registration fee;



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

b) The required monthly fee for access to the Primerica sales platform since signing up;

c) A licensing fee and renewal fees;

d) Monthly fees for office space;

e) Non-Primerica-branded sales aids and promotional items;

f) Travel and lodging to events; and

g) Monthly bills for his cell phone and internet bills.

81. During Plaintiff Campbell's tenure, Primerica determined the prices at which all products could be sold. He did not have the authority nor ability to sell or advertise prices for Primerica products at a different price. All sales by any customer that Plaintiff Campbell referred to Primerica were made through Primerica-controlled platforms.

82. During Plaintiff Campbell's tenure, including during the last four years, Plaintiff Campbell was not compensated for his time doing any of the aforementioned activities, nor paid any overtime. Plaintiff Campbell informed Primerica in June 2024 that he was terminating employment, effective immediately. Plaintiff Campbell did not receive a final paycheck for unpaid wages within 72 hours of his resignation.

83. During Plaintiff Campbell's tenure, Plaintiff Campbell regularly paid out of pocket for expenses related to his work for Primerica. Plaintiff Campbell was not compensated for out-of-pocket expenses.

84. The commissions were paid via direct deposit. No paystub was provided that identified hours worked, nor were any employment taxes withheld at any time.

**F. <u>Plaintiff Jones's Experiences as a Primerica Independent Financial Contractor</u>**

85. Plaintiff Jones worked for Primerica as an Independent Financial Contractor from March 2018 to October 2024.

86. When she signed up, Primerica required Plaintiff Jones to adhere to its many rules and policies, including its exclusivity policy and rule against naming

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Primerica in any advertisements. Plaintiff Jones was not engaged in an independently established trade, occupation, or business as a sales professional and had limited sales experience. Primerica also required Plaintiff Jones to pay a registration fee to become an Independent Financial Contractor.

87. In exchange for monthly fees, Primerica provided Plaintiff Jones with a personalized Primerica website URL to keep track of her recruitment records.

In the course of her tenure as an Independent Financial Contractor on behalf of Primerica, Plaintiff Jones predominantly recruited new Independent Financial Contractors and brought in new customers for other Independent Financial Contractors to sell to. To carry out this marketing work, Plaintiff Jones performed the following tasks:

h) Solicited new customers and Independent Financial Contractors;

i) Posted on social media pages about Primerica opportunities, without mentioning “Primerica”;

j) Participated in efforts to recruit and onboard new Independent Financial Contractors;

k) Attended meetings twice a week with Leads, upline and downline Independent Financial Contractors, and new potential recruits;

l) Tracked and reported her recruitment progress.

88. Plaintiff Jones performed all these tasks regularly throughout her tenure, typically spending over forty hours a week, often working for periods of more than eight hours. Plaintiff Jones performed these activities throughout the day, nearly every day, often in short increments adding up to eight hours a day.

89. Plaintiff Jones, like all Independent Financial Contractors, worked under Primerica’s pervasive control and direction. Recruiting new Independent Financial Contractors to aid recruitment and make sales—the main responsibility of Independent Financial Contractors—is work that is precisely in line with Primerica’s usual course of business.

90. Plaintiff Jones paid the following fees and out-of-pocket, work-related expenses throughout her tenure, for which she was not reimbursed by Primerica:

m) A registration fee;

n) The required monthly fee for use of the Primerica website;

o) A licensing fee;

p) Non-Primerica-branded sales aids and promotional items

q) Monthly bills for her cell phone and internet bills.

91. During Plaintiff Jones's tenure, Primerica determined the prices at which all products could be sold. She did not have the authority or ability to sell or advertise prices for Primerica products at a different price. All sales by any customer that Plaintiff Jones referred to Primerica were made through Primerica-controlled platforms.

92. During Plaintiff Jones's tenure, including during the last four years, Plaintiff Jones was not compensated for her time doing any of the aforementioned activities, nor paid any overtime. Plaintiff Jones informed Primerica in October 2024 that she was terminating employment, effective immediately. Plaintiff Jones did not receive a final paycheck for unpaid wages within 72 hours of his resignation.

93. During Plaintiff Jones's tenure, Plaintiff Jones regularly paid out-of-pocket for expenses related to her work for Primerica. Plaintiff was not compensated for out-of-pocket expenses.

94. Plaintiff Jones never received a commission from Primerica. Despite putting in hours and hours of work to Primerica's benefit, Plaintiff Jones did not receive a single commission for her faithful recruiting.

## V. <u>CLASS ALLEGATIONS</u>

95. Plaintiffs incorporate and reallege the above paragraphs.

96. Plaintiffs bring this action on their own behalf, as well as on behalf of each and all other persons similarly situated, and thus seek class certification under California Code of Civil Procedure section 382.





Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

97. All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

98. Plaintiffs' proposed class consists of and is defined as follows:

> All current and former Independent Financial Contractors who resided in the State of California or who performed marketing or sales activities in California during the applicable statutes of limitations through the date a class is certified.

99. Plaintiffs also allege the following subclass:

<u>The Above-Standard Minimum Wage Subclass</u>

> All current and former Primerica Independent Financial Contractors classified as independent contractors who resided in California cities or counties with a minimum wage rate greater than the California minimum wage during the applicable statutes of limitations through the date a class is certified. This subclass includes, but is not limited to, residents of Los Angeles (City and County), San Francisco, San Diego, Oakland, and San Jose.

100. Members of the Class will hereinafter be referred to as "Class Members." Plaintiffs reserve the right to redefine the Class and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

101. ***Ascertainable and numerous.*** The Class is ascertainable and numerous such that joinder is impractical. The membership of the entire class is unknown to Plaintiffs at this time. However, the class will likely consist of thousands of members, the precise number of which is within the knowledge of and can be readily ascertained through Primerica's records.

102. ***Community of Interest.*** There is a well-defined community of interest amongst Class Members. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because the Class is both numerous and its membership is geographically widespread across California. A class action will achieve economies of time, effort and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class. In addition:

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

103. ***Predominating Common Questions.*** There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

a) Whether Primerica misclassified its Independent Financial Contractors as independent contractors when in fact they were Primerica employees;

b) Whether Primerica failed to pay Plaintiffs and Class Members the legally mandated minimum wage for all hours worked;

c) Whether Primerica failed to pay Plaintiffs and Class Members overtime wages;

d) Whether Primerica failed to timely pay wages due to Plaintiffs and Class Members during their employment;

e) Whether any misclassification by Primerica was voluntary and knowing;

f) Whether Independent Financial Contractors' duties fall within the Direct Sales Exemption to AB5;

g) Whether Primerica controlled the manner and means of the Independent Financial Contractors' work;

h) Whether Primerica failed to reimburse Independent Financial Contractors' business expenses;

i) Whether Primerica failed to maintain accurate time records for its Independent Financial Contractors;

j) Whether Primerica failed to provide complete and accurate wage statements to its Independent Financial Contractors;

k) Whether Primerica failed to pay Independent Financial Contractors their wages due at termination; and

l) Whether Primerica should be enjoined from continuing the practices described herein.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

104. ***Typicality.*** Plaintiffs' claims are typical of the claims of Class Members because Plaintiffs, like all members of the Class, worked as Independent Financial Contractors for Primerica in California and were required to adhere to Primerica's rules and policies. Furthermore, like all members of the Class, Plaintiffs sustained damages from Primerica's wrongful conduct. Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

105. ***Adequacy.*** Plaintiffs will fully and adequately assert and protect the interests of the Class and have retained counsel who are experienced in prosecuting class actions. Plaintiffs acknowledge that they have an obligation to make known to the Court any relationship, conflicts or differences with any Class Member. Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Failure to Pay Minimum Wages and Liquidated Damages)**
**Cal. Lab. Code §§ 1182.12, 1194, 1197, 1197.1, 1198, 558.1, 1194.2, 558(a); IWC Wage Order 4-2001**

***Against Primerica Financial Services Insurance Marketing, Inc.; Glenn J. Williams; Peter W. Schneider; Tracy Tan; Lisa A. Brown; Robert H. Peterman, Jr.; Brett A. Rogers; Julie A. Seman and Does 1–50, inclusive***

106. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

107. At all relevant times, California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 have provided that the minimum wage for employees fixed by the Industrial Welfare Commission is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful. California law provides employees in California must be paid for all hours worked, up to 40 per week or eight (8) per day, at a regular time rate no less than the mandated minimum wage. Compensable work time is defined by the applicable wage order as "the time during

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. Tit. 8, § 11070(2)(G) (defining "Hours Worked").

108. As alleged herein, during the relevant time period, Primerica maintained and still maintains a policy of requiring employees to work off-the-clock, without compensation. Primerica only compensates Independent Financial Contractors, including Plaintiffs, based on specific sales placed through the Primerica website, and does not pay wages for other hours worked. These hours include time spent doing the following, inter alia:

a) In training;

b) Communicating with other Independent Financial Contractors about policies, practices, and sales instructions and guidance;

c) Recruiting other Independent Financial Contractors;

d) communicating with customers after their purchases were made to handle routine customer service; and

e) handling other responsibilities as needed.

Plaintiffs and Class Members performed these activities throughout the day, nearly every day, often in short increments adding up to one to two hours a day.

109. Primerica provided no way for Plaintiffs and Class Members to log time spent and submit to Primerica.

110. Primerica's failure to pay Plaintiffs and Class Members for work, and failure to pay overtime wages owed, also resulted in failures to pay Plaintiffs and Class Members the minimum wage required, in violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, 1198. In addition, Primerica's failure to pay for hours worked is a violation of various municipal and county codes across the state, including, but not limited to City of Los Angeles Municipal Code Art. 7; County of Los Angeles Code § 8.100.040, *et seq.*, San Francisco Cal. Code 12R.

111. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for minimum wage violations. *See* Cal. Lab. Code § 558.1. Defendants PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC.; GLENN J. WILLIAMS; PETER W. SCHNEIDER; TRACY TAN; LISA A. BROWN; ROBERT H. PETERMAN, JR.; BRETT A. ROGERS; JULIE A. SEMAN; and DOES 1–50, inclusive, failed to pay Plaintiffs and other putative class members the minimum wage and all Defendants are liable for causing this violation under § 558.1.

112. As such, pursuant to California Labor Code § 1194.2, Plaintiffs and Class Members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Pursuant to § 558(a), Plaintiffs and Class Members are also entitled to recover unpaid wages and statutory damages in the amount of $50 for any initial violation per employee for each pay period and $100 for each subsequent violation per employee for each pay period and interest pursuant to § 218.6.

## SECOND CAUSE OF ACTION

**(Failure to Pay Overtime Wages and Liquidated Damages)**
**Cal. Lab. Code §§ 510, 558.1, 1194.2, 558(a); IWC Wage Order 4-2001**

***Against Primerica Financial Services Insurance Marketing, Inc.; Glenn J. Williams; Peter W. Schneider; Tracy Tan; Lisa A. Brown; Robert H. Peterman, Jr.; Brett A. Rogers; Julie A. Seman and Does 1–50, inclusive***

113. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

114. California Labor Code § 510 and Wage Order No. 4-2001 require employers to pay no less than one and one-half times the regular rate of pay of the employee for hours worked in excess of eight (8) hours in one workday, for hours worked in excess of forty (40) hours in one workweek, and for the first eight (8) hours worked on the seventh day of work in any one workweek, and to pay no less than twice the regular rate of pay of the employee for hours worked in excess of twelve

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

(12) hours in one workday and for any work in excess of eight (8) hours on any seventh day of a workweek. During the relevant time period, Plaintiffs and other putative class members worked over 8 hours in a day and/or 40 hours in a week without overtime compensation because Primerica failed to pay them for their work duties, as described above. This was, in turn, due to Primerica's unlawful misclassification of Independent Financial Contractors as independent contractors rather than as employees. On occasions when Plaintiffs and other putative class members had already worked eight hours in one day (performing all their work off-the-clock), Primerica failed to pay them any overtime compensation due. Therefore, Plaintiffs and the other putative class members were entitled to receive overtime compensation from Primerica that Primerica failed to pay, violating California Labor Code § 510 and Wage Order No. 4-2001. In addition, Primerica's failure to pay overtime is a violation of various municipal and county codes across the state, including, but not limited to City of Los Angeles Municipal Code Art. 7; County of Los Angeles Code § 8.100.040, *et seq*., San Francisco Cal. Code 12R.

115. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for overtime wage violations. *See* Cal. Lab. Code § 558.1. Defendants PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC.; GLENN J. WILLIAMS; PETER W. SCHNEIDER; TRACY TAN; LISA A. BROWN; ROBERT H. PETERMAN, JR.; BRETT A. ROGERS; JULIE A. SEMAN; and DOES 1–50, inclusive, failed to pay Plaintiffs and other putative class members overtime wages and all Defendants are liable for causing this violation under § 558.1.

116. As such, pursuant to California Labor Code § 1194.2, Plaintiffs and Class Members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Pursuant to § 558(a), Plaintiffs and Class Members are also entitled to recover unpaid wages and statutory damages in the amount of $50 for any initial violation per employee for each pay period and $100 for

each subsequent violation per employee for each pay period and interest pursuant to § 218.6.

**THIRD CAUSE OF ACTION**

**(Failure to Provide Rest Periods or Rest Break Premium Wages)**
**Cal. Lab. Code §§ 226.7, 558.1; IWC Wage Order 4-2001**

***Against Primerica Financial Services Insurance Marketing, Inc.; Glenn J. Williams; Peter W. Schneider; Tracy Tan; Lisa A. Brown; Robert H. Peterman, Jr.; Brett A. Rogers; Julie A. Seman and Does 1–50, inclusive***

117. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

118. California Labor Code § 226.7 and IWC Wage Order 4-2001 require an employer to authorize or permit an employee to take a rest period of ten net minutes for every four hours worked, or major fraction thereof, and such rest periods must be in the middle of the four-hour period insofar as practicable. If the employer fails to provide any required rest periods or fails to provide a fully compliant rest break for a net ten minutes wherein the employee is fully relieved of all duties and all employer control, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday the employer did not provide a legally required and/or fully compliant rest period.

119. Primerica failed to provide Plaintiffs and the Class all required and/or fully compliant rest periods, or compensation in lieu thereof. Primerica employed policies and procedures that ensured Plaintiffs and the Class would not receive all legally required rest periods as Primerica improperly classified Plaintiffs and the Class as independent contractors rather than as employees and did not authorize nor permit all required rest periods in strict accordance with the timing requirements of all applicable Wage Orders. Primerica similarly employed policies and procedures that rendered rest periods non-compliant with the requirements of California law by, inter alia, failing to relieve Plaintiffs and the Class of all duties and all employer





Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

control. Primerica further employed policies and procedures ensuring Plaintiffs and the Class never received a rest period premium during employment.

120. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for rest period violations. *See* Cal. Lab. Code § 558.1. Defendants PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC.; GLENN J. WILLIAMS; PETER W. SCHNEIDER; TRACY TAN; LISA A. BROWN; ROBERT H. PETERMAN, JR.; BRETT A. ROGERS; JULIE A. SEMAN; and DOES 1–50, inclusive, failed to provide Plaintiffs and the Class all rest periods or compensation in lieu thereof and all Defendants are liable for causing this violation under § 558.1.

121. As a result, under California Labor Code § 226.7, Plaintiffs and the Class are entitled to one additional hour's pay for each day a rest break was missed, late or interrupted, all in an amount according to proof.

## FOURTH CAUSE OF ACTION

**(Failure to Provide Meal Periods or Meal Premium Wages)**
**Cal. Lab. Code §§ 226.7, 512(a), 1198, 558.1; IWC Wage Order 4-2001**

***Against Primerica Financial Services Insurance Marketing, Inc.; Glenn J. Williams; Peter W. Schneider; Tracy Tan; Lisa A. Brown; Robert H. Peterman, Jr.; Brett A. Rogers; Julie A. Seman and Does 1–50, inclusive***

122. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

123. Under California Labor Code §§ 226.7, 512(a), 1198, and IWC Wage Order 4-2001, Primerica was required to provide Plaintiffs and Class Members with one thirty-minute meal break free from all duties for all shifts longer than five (5) hours, and a second thirty-minute meal break free from all duties for all shifts longer than 10 hours and a third thirty-minute meal break free from all duties for all shifts longer than 15 hours. Employers covered by the Wage Orders have an obligation to both (1) relieve their employees for at least one meal period for shifts over five hours,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and (2) to record having done so. If the employer fails to properly record a valid meal period, it is presumed no meal period was provided. Section 226.7 also requires an employer to pay mandated premiums of an extra hour of wages to any employees who have not been provided with a timely meal or rest break.

124. As alleged herein, Plaintiffs and the Class regularly worked periods of more than five (5), ten (10), and fifteen (15) hours in a workday without being provided requisite mandatory timely, thirty-minute, duty-free meal periods. Primerica also failed to pay Plaintiffs and the Class an additional hour of wages at their regular rate for each workday a meal period and/or a legally compliant meal period was not provided.

125. Primerica failed to provide Plaintiffs or the other putative class members with an opportunity to take timely, uninterrupted meal periods of the requisite length, free from employer control. Primerica also failed to compensate Plaintiffs and the putative class members properly for the non-compliant meal periods including, inter alia, missed, short, late, and/or interrupted meal periods. Primerica also failed to pay premium wages for the many meals that Plaintiffs and the putative class members were deprived of. Indeed, Primerica did not provide any meal breaks or premium compensation for missed breaks to Plaintiffs or other putative class members, since Primerica improperly classified its Independent Financial Contractors as independent contractors who were not entitled to meal breaks.

126. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for meal period violations. *See* Cal. Lab. Code § 558.1. Defendants PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC.; GLENN J. WILLIAMS; PETER W. SCHNEIDER; TRACY TAN; LISA A. BROWN; ROBERT H. PETERMAN, JR.; BRETT A. ROGERS; JULIE A. SEMAN; and DOES 1–50, inclusive, failed to provide Plaintiffs and other putative class members

all meal periods or compensation in lieu thereof and all Defendants are liable for causing this violation under § 558.1.

127. As a result, under California Labor Code § 226.7, Plaintiffs and the Class are entitled to one additional hour's pay for each day a meal period was missed, late or interrupted, all in an amount according to proof.

## FIFTH CAUSE OF ACTION

**(Failure to Timely Pay Wages During Employment)**
**Cal. Lab. Code §§ 204, 210(a), 218.6**

***Against Primerica Financial Services Insurance Marketing, Inc.; and Does 1–50, inclusive***

128. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

129. At all relevant times herein set forth, California Labor Code § 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

130. California Labor Code § 204 also requires that all wages earned for labor more than the normal work period shall be paid no later than the payday for the next regular payroll period.

131. During the relevant period, Primerica failed to pay Plaintiffs and the Class, as well as all other putative class members, all wages due to them, including minimum wages, overtime wages, and meal and rest period premium wages, within any time period specified by § 204. Moreover, Primerica failed to pay Plaintiff or other putative class members earned commissions in a timely and complete fashion.





Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

132. As such, pursuant to California Labor Code § 210(a), Plaintiffs and Class Members are entitled to recover stator damages in the amount of $100 for any initial violation per failure to pay each employee and $200 for each subsequent, or willful or intentional violation for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld, and interest pursuant to § 218.6.

**SIXTH CAUSE OF ACTION**

**(Failure to Timely Pay All Earned and Unpaid Wages Upon Separation of Employment)**
**Cal. Lab. Code §§ 201-203, 558.1**

***Against Primerica Financial Services Insurance Marketing, Inc.; Glenn J. Williams; Peter W. Schneider; Tracy Tan; Lisa A. Brown; Robert H. Peterman, Jr.; Brett A. Rogers; Julie A. Seman and Does 1–50, inclusive***

133. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

134. At all times relevant herein set forth, California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves their employment, their wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of their intention to quit, in which case the employee is entitled to their wages at the time of quitting.

135. California Labor Code § 203 provides that, at the time of termination of employment, the employer must pay an employee all wages due and owing within the time frames set forth in §§ 201, *et seq*. If an employer willfully refuses to pay, without abatement or reduction, in accordance with §§ 201 and 202, any wages of an employee who is discharged or who quits, the employee's wages shall continue as a penalty for up to thirty (30) days from the due date, until paid or until an action to recover those wages is commenced.

136. As alleged herein, following Plaintiffs' final days of employment, Primerica willfully failed to pay Plaintiffs and the Class all wages due and owing



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

within the deadlines set forth in California Labor Code §§ 201, *et seq*., including unpaid overtime wages and wages for missed/noncompliant meal and rest periods.

137. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for failure to pay all wages at the time of termination. *See* Cal. Lab. Code § 558.1. Defendants PPRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC.; GLENN J. WILLIAMS; PETER W. SCHNEIDER; TRACY TAN; LISA A. BROWN; ROBERT H. PETERMAN, JR.; BRETT A. ROGERS; JULIE A. SEMAN; and DOES 1–50, inclusive, failed to pay all wages at the time of termination of Plaintiffs and Class Members and all Defendants are liable for causing this violation under § 558.1.

138. Pursuant to California Labor Code § 203, Plaintiffs and the Class are entitled to recover waiting time penalties of up to thirty (30) days' pay, plus attorneys' fees and costs, in an amount according to proof.

## SEVENTH CAUSE OF ACTION

**(Failure to Provide Timely and Accurate Wage Statements)**
**Cal. Lab. Code §§ 226(a), 1198, 558.1, 226(e)**

***Against Primerica Financial Services Insurance Marketing, Inc.; Glenn J. Williams; Peter W. Schneider; Tracy Tan; Lisa A. Brown; Robert H. Peterman, Jr.; Brett A. Rogers; Julie A. Seman and Does 1–50, inclusive***

139. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

140. At all relevant times herein set forth, California Labor Code § 226(a) provides that, at the time of each payment of wages, the employer must provide each employee with an itemized statement showing gross wages earned, total hours worked, all deductions taken, net wages earned, the inclusive dates for which the employee is being paid, the employee's name and last four digits of their social security number, the name and address of the legal entity that is the employer, and all



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

applicable hourly rates in effect during the pay period and all hours worked at each rate.

141. California Labor Code § 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.

142. As alleged herein, Primerica knowingly and willfully failed to provide Plaintiffs and the Class with proper, itemized wage statements. Wage statements provided to Plaintiff and the Class did not show total/actual hours worked and all applicable hourly rates in effect during the pay period and all hours worked at each rate. The wage statements provided to Plaintiffs and the Class failed to reflect all time spent in training, making and responding to social media posts, making business expenditures by stocking their own Primerica inventory, and communicating with other Independent Financial Contractors about policies, practices, and sales instructions and guidance. Primerica's refusal to properly record this time, and to include it in its itemized wage statements, or to properly pay its employees for this time was willful and intentional. As a result of these violations, Plaintiffs and the Class suffered injury because they were not paid for all hours worked.

143. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for wage statement violations. *See* Cal. Lab. Code § 558.1. Defendants PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC.; GLENN J. WILLIAMS; PETER W. SCHNEIDER; TRACY TAN; LISA A. BROWN; ROBERT H. PETERMAN, JR.; BRETT A. ROGERS; JULIE A. SEMAN; and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

DOES 1–50, inclusive, failed to provide Plaintiffs and the Class accurate wage statements and all Defendants are liable for causing this violation under § 558.1.

144. Pursuant to California Labor Code § 226(e), Plaintiffs and the Class are entitled to a penalty in the amount of fifty dollars ($50) for the initial pay period in which a violation occurred, and a penalty of one-hundred dollars ($100) for each violation in a subsequent pay period, up to an aggregate penalty of four-thousand dollars ($4,000), as well as costs of suit and attorneys' fees, all in an amount according to proof.

## EIGHTH CAUSE OF ACTION

**(Failure to Reimburse Business Expenses)**
**Cal. Lab. Code §§ 450, 2802, 558.1; IWC Wage Order 4-2001**

***Against Primerica Financial Services Insurance Marketing, Inc.; Glenn J. Williams; Peter W. Schneider; Tracy Tan; Lisa A. Brown; Robert H. Peterman, Jr.; Brett A. Rogers; Julie A. Seman and Does 1–50, inclusive***

145. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

146. At all times herein set forth, California Labor Code § 2802 has provided and provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of their job. The purpose of § 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order 4-2001, paragraph 9(B) provides that: "When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft." Primerica's conduct, in misclassifying their Independent Financial Contractors as independent contractors and failing to



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

reimburse them for expenses Independent Financial Contractors paid that should have been borne by their employer, constitutes a violation of California Labor Code §§ 450 and 2802.

147. Primerica violates California Labor Code § 2802 by having failed, and failing, to reimburse Plaintiffs and the Class for their business-related expenses. These expenses include the subscription to use the Primerica website sales and recruiting platform that Primerica charged Plaintiffs and the Class, as well as other business expenses, as set forth *supra* §§ IV.E-F, which Primerica did not reimburse. And during the relevant period, Primerica required Plaintiffs and the Class to use their own personal cellular phones and/or cellular phone data to carry out Primerica's business operations, but failed to reimburse them for the full costs of their work-related cellular phone expenses. For example, Plaintiffs and the Class were required to use a personal cellular phone to make social media posts and communicate with customers and their upline. Plaintiffs and the Class also incurred expenses associated with maintaining a home internet connection. Primerica did not reimburse Independent Financial Contractors for these expenses.

148. Primerica's company-wide policy and/or practice of passing on its operating costs to Plaintiffs and the Class violates California Labor Code § 2802. At all times described herein, Primerica has acted willfully, and deliberately with oppression, fraud and malice to unlawfully deprive its employees of the employees' own personal resources in furtherance of Primerica's profits.

149. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for failure to reimburse business expenses. *See* Cal. Lab. Code § 558.1. Defendants PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC.; GLENN J. WILLIAMS; PETER W. SCHNEIDER; TRACY TAN; LISA A. BROWN; ROBERT H. PETERMAN, JR.; BRETT A. ROGERS; JULIE A. SEMAN;



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and DOES 1–50, inclusive, failed to reimburse business expenses to Plaintiff and the Class and all Defendants are liable for causing this violation under § 558.1.

150. As a result of Primerica's failure to reimburse Plaintiffs and the Class for all business-related expenses, pursuant to California Labor Code § 2802, Plaintiffs and the Class are entitled to recover unreimbursed business expenses, plus attorneys' fees and costs, in an amount according to proof.

## NINTH CAUSE OF ACTION

**(Unfair Competition)**
**Bus. & Prof. Code § 17200 *et seq.***
***Against Primerica Financial Services Insurance Marketing, Inc., and Does 1–50, inclusive***

151. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

152. From a date unknown to Plaintiffs and continuing to the present, Primerica has and continues to engage in business acts or practices that constitute unfair competition as defined in the Unfair Competition Law, Business and Professions Code § 17200 *et seq.*, in that such business acts and practices are unlawful and unfair within the meaning of that statute.

***"Unlawful" Prong***

153. Primerica has violated section 17200's prohibition on unlawful conduct through the following violations:

a) Failing to pay minimum wages, as set forth in the First Cause of Action;

b) Failing to pay overtime wages, as set forth in the Second Cause of Action;

c) Denying rest periods and/or failing to pay rest break premium wages, as set forth in the Third Cause of Action;

d) Failing to provide meal periods and/or pay associated premium wages, as set forth in the Fourth Cause of Action;

e) Failing to timely pay wages during employment, as set forth in the Fifth Cause of Action;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

f) Failing to timely pay all earned and unpaid wages upon separation of employment, as set forth in the Sixth Cause of Action;

g) Failing to provide timely and accurate wage statements, as set forth in the Seventh Cause of Action; and

h) Failing to reimburse business expenses, as set forth in the Eighth Cause of Action.

154. The forgoing unlawful conduct of Primerica alleged herein constitutes unfair competition within the meaning of California Business and Professions Code § 17200 *et seq*.

***"Unfair" Prong***

155. Primerica has violated California Business and Professions Code § 17200's prohibition on unfair conduct by engaging in each of the foregoing unlawful acts.

156. Furthermore, as set forth *supra* Section IV.B.6, Primerica has violated § 17200's prohibition on unfair conduct by unfairly and unconscionably structuring its Agreement and business activities in a way that does not create meaningful opportunities for Independent Financial Contractors to earn a fair wage and/or commission for their work. Primerica used its superior bargaining power, superior market power, and take-it-or-leave-it Agreement to prevent Independent Financial Contractors from exercising discretion and accessing tools and resources needed to market the products effectively and competitively to generate profits. And Primerica further undermined Independent Financial Contractors' ability to earn compensation by engaging in activities in competition with the Independent Financial Contractors, by for example, maintaining the exclusive right to disseminate online advertising to any customer sales leads generated by the Independent Financial Contractors and selling products via Amazon.com. By denying Independent Financial Contractors meaningful opportunities to earn fair commission, Primerica also unfairly incentivized Independent Financial Contractors to divert time and attention away

from marketing the sale of products to retail customers to marketing the opportunity to become an Independent Financial Contractor to unsuspecting members of the California public. So long as Defendants continue these unfair practices, the California public remains at risk for being recruited into Primerica and similarly harmed.

157. Primerica's unfair acts were in contravention of public policy. California public policy encourages the proper classification of workers to ensure that workers are fairly compensated and provided the full benefits and protections of employment, competitors are operating in a fair and honest marketplace, and the state is not deprived of tax revenue.

158. Primerica's unfair acts were immoral, unethical, oppressive, unscrupulous, and substantially injurious to the Class and general public. Primerica knowingly and willfully classified the Independent Financial Contractors as independent contractors. And it knowingly and willfully structured an unfair and unconscionable Agreement that did not provide for meaningful opportunities to earn compensation, while engaging in business activities that would further frustrate Independent Financial Contractors' efforts to earn compensation.

159. The impact on the Class and general public is not outweighed by any countervailing benefits. To the extent any benefits inured to Plaintiff, the Class, and the general public, those benefits are outweighed by the impact of Defendants' unfair acts. Independent Financial Contractors, including Plaintiffs, incurred substantial costs in working as Independent Financial Contractors, and were not paid appropriately and fairly for their time and efforts. They could have chosen other opportunities or invested that time and money into other legitimate and fairly paying endeavors.

160. As a result of Primerica's unfair competition as alleged herein, Plaintiffs and the Class have suffered injury in fact and lost money or property, as described in more detail above. Pursuant to California Business and Professions Code § 17200, *et*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*seq.*, Plaintiff and the Class are entitled to restitution of all wages and other monies rightfully belonging to them that Primerica failed to pay and wrongfully retained by means of its unlawful and unfair business practices, and/or all other equitable remedies that may be available.

161. To prevent Primerica from continuing to prey on the California public through their misclassification of their Independent Financial Contractors, and recruitment of new Independent Financial Contractors under these false pretenses, Plaintiffs and the Class also seek a public injunction against Defendants enjoining Primerica, and any and all persons acting in concert with them, from engaging in each of the California Labor Code violations set forth herein and from recruiting new Independent Financial Contractors or authorizing others to recruit new Independent Financial Contractors, under a misclassified status, including making representations about that status and the commission-based compensation structure.

## VII. PRAYER FOR RELIEF

WHEREFORE Plaintiffs and the Class pray for judgment and relief as follows:

(1) An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

(2) Statutory penalties and compensatory damages as authorized under the California Labor Code;

(3) Restitution and all other equitable remedies pursuant to California's Unfair Competition Law;

(4) Public Injunctive relief, pursuant to California's Unfair Competition Law, prohibiting Primerica, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, whether acting directly or indirectly, in connection with the management, hiring, or coordination of Independent Financial Contractors, or the advertising, promotion, or recruitment of new Independent Financial Contractors, from:

a. Engaging in the California Labor Code violations as alleged herein, including classifying Independent Financial Contractors as non-employees or independent contractors;

b. Recruiting new Independent Financial Contractors or authorizing others to recruit new Independent Financial Contractors, under a misclassified status, including making representations about that



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

status and the commission-based compensation structure.

(5) Punitive damages against the individual officer, director or managing agent Defendants pursuant to Cal. Civil Code § 3294;

(6) Reasonable attorneys' fees pursuant to the California Labor Code, including § 226(e), and Code of Civil Procedure § 1021.5;

(7) Pre- and post-judgment interest pursuant to Labor Code section 218.6; and

(8) Such other and further relief as the Court may deem just and proper.

## VIII. DEMAND FOR TRIAL BY JURY

Plaintiffs and the Class hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

DATED: March 10, 2026

**CLARKSON LAW FIRM, P.C.**

By: */s/ Glenn A. Danas*
Glenn A. Danas
Kristen G. Simplicio
Maxim Gorbunov

*Attorneys for Plaintiffs and Putative Class*